**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**v.**                                                          **MAGISTRATE NO.  16-730 (DAR)**

**PAMELA KIREA WILSON,**

**Defendant.**

**DETENTION MEMORANDUM**

This matter comes before the Court upon the application of the United States that Defend-
ant Pamela Wilson be detained pending trial.  Defendant has been charged by complaint with one
count of Distribution of Child Pornography through Interstate Commerce, in violation of 18 U.S.C.
§ 2252(a)(2), a felony involving a crime of violence against a minor.  The United States requested
a detention hearing under 18 U.S.C. § 3142(f)(1)(A).  The Court held a combined preliminary
hearing and detention hearing on October 28, 2016.

At the hearing, Defendant raised a number of arguments that required additional briefing
from the parties, including that the United States has presented insufficient evidence to support a
finding of probable cause to believe that Defendant distributed child pornography as defined by
18 U.S.C. § 2252(a)(2).  Accordingly, the Court ordered an expedited briefing schedule and held
a continued preliminary and detention hearing on November 1, 2016.

Upon consideration of the proffers and arguments of counsel and the entire record herein,
the Court now finds probable cause that Defendant distributed child pornography in violation of
18 U.S.C. § 2252(a)(2) and that Defendant should be held without bail pursuant to 18 U.S.C. §

3142(e).  This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall—include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

At the hearing, the United States proceeded by proffer based on the Complaint and testimony provided by District of Columbia Metropolitan Police Department ("MPD") Detective Timothy Palchak ("Detective Palchak" or "UC").  The defense offered no contrary evidence.  Accordingly, the Court makes the following findings of fact:

Leading up to August 29, 2016, Detective Palchak had been acting in an undercover capacity ("UC") as a special agent with the Federal Bureau of Investigation ("FBI") as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that capacity, he posted an advertisement in an area of an online website for classified advertisements which he believes, based on his experience and information gathered from other sources, is frequented by individuals who have a sexual interest in children and incest. Detective Palchak intended for the advertisement to attract individuals with a sexual interest in children.

On August 29, 2016, at 4:48 p.m., an individual later identified as Defendant Pamela Wilson responded to the UC's advertisement by email, stating, "Not a dad or a mom, just a normal 20 year old female, but I think we're on the same page with our thinking and enjoy the same exact

2

things."  The UC responded, "sweet 30 dad here with daughter.  Do you have kik? easier to talk."[1]

Defendant replied, "How old is she?  I actually don't.  Honestly probably not the safest place to

chat.  I know a guy its talking to who said it wasn't."  The UC responded, "she is very yng so not

sure if that is your thing what is your limit?"  Defendant replied, "I prefer younger.  The younger

the better actually.  My cut off limit is between 7.  So anything under that is great."  The UC then

informed Defendant that he was sexually active with his purported nine-year-old daughter, and

that he had been since "she was in diapers."  Defendant responded, "9 is fine.  I was thinking you

were talking younger.  9 is nothing.  That's the best!  You're lucky to have been with her that

young.  That's one of my big things I want to try tasting at a really young age.  Is her mom in-

volved?"  Defendant continued, "Like I said I'm not a mom but would love to join.  Would really

like to lick her."  Wilson then suggested that the UC and she communicate through text message

on their cellular phones.  The UC agreed and provided Defendant with his cellular phone number.

Defendant provided the UC with her cellular phone number.  The two then resumed their conver-

sation through text messages.

       During the course of their text messaging conversation, Defendant identified herself as a

twenty-year-old, mixed-race female living in Lorton, Virginia.  The UC asked Defendant to take

a photograph of herself holding up four fingers and to send it to him to validate her identity.  De-

fendant sent the UC an image depicting a female holding up four fingers above her chest.  Defend-

ant later sent the UC an image of her face.  This image matched the Department of Motor Vehicle's

---

[1] All typographical and grammatical errors come from the original text messages.

image for Pamela Wilson obtained by the FBI.

Defendant stated during their text message exchange that she has limited sexual experience with children, but that she has "touched" children for whom she babysat in the past. She indicated that the children "were like 7." Defendant also informed the UC that she has an interest in meeting with him to perform sexual acts on his purported nine-year-old daughter. Defendant asked the UC whether he had "established rules with [his] daughter about talking about these things," and the UC indicated that he had. Defendant then continued to discuss the logistics of meeting with him.

The next day, the UC and Defendant resumed their text message communication. Defendant continued to express her desire to engage in sexual acts with the UC's purported daughter, stating that she was "excited to taste her when" she does. The UC and Defendant chatted over the next several days. They continued discussing the logistics of a meeting between the two of them.

On September 13, 2016, the UC and Defendant had the following text message exchange:

Defendant: Definitely interested in both her licking me and me on her. I think I'll be a ball of nerves so we'll let you start out.

UC: Yes I think that is best, I'm thinking may I'll lay her down on the couch and start licking and playing with her pussy to make everyone comfortable

UC: Can't wait to see her lick your pussy

Defendant: Yeah, that sounds good. I can't wait to taste her and can't wait for her to lick me either

UC: After the first time it will be easier with the nerve thing lol

Defendant: It might not be her thing though.

4

Defendant: I hope so lol

UC: It is we talked about it she really wants to try I have shown her a lot of vids

Defendant: Awesome!

Defendant: Speaking of vids, if you do see her this week do you mind sending me a video of maybe you licking her or something?

UC: Well I'm nervous sending that out until I really know a person.  But would I can do is meet u before we play with her and FaceTime her and have her spread her pussy so u feel more comfortable

Defendant: Yeah, I'm okay with that.  Totally understand.  We can do that.

Defendant: Wanted to play to her lol but I have enough videos to do that too

Defendant: To*

UC: Perfect that way we all feel better and you will know for sure we are legit.  I live near the Verizon center so we can meet in public first

UC: You have a lot of good vids lol

UC: What's the youngest u have

Defendant: They're decent, but you tend to want more and longer ones.

Defendant: Probably 1 maybe a little younger

UC: I know the feeling, mmmmmm I miss that age so much can I see the ones u have.  Live the puffy pussy at that age

Defendant: Yes, I know!!!  I love how puffy they are too.  Wish your daughter was younger lol.

Defendant: It's in a Dropbox don't fell comfortable sending videos but I don't mind giving you access to the Dropbox

Defendant sent the UC a link to her password-protected DropBox account, along with her email account, butterfly69@gmail.com, and her password used to access the account.  DropBox is a cloud storage product that allows a user to create an account to save and store digital content, including images and videos, in folders, and to share that content by providing others with the email address and password used to log in to the account.  The UC used Defendant's email address and password to enter her DropBox account and, upon logging in, viewed the contents of Defendant's DropBox folders on his own computer.  The UC and Defendant had the following exchange after the UC accessed Defendant's DropBox account:

UC: Got in

UC: Mmmm

Defendant: Lol you're very welcome

UC: Which one is best

Defendant: Me personally I'm into oral and seeing more of their pussy

Defendant: If you go to almighty collection[2] I like the first one

UC: Let me look

Defendant: Mom and daughter it's pretty long which I love

Defendant: You have to go to files

UC: Mmmm I love when there are voices

---

[2] "Almighty collection" was the title of one of the folders in Defendant's DropBox account used to store child pornography.

UC: She is licking her good

Defendant: And then if you go to files again I also like pretty much everything in videos[3] except for a few.  My favorite is the fifth one down I love watching the dad lick her

Defendant: She is!

UC: Ok let me look now

Defendant: Also a video in hey[4] I love watching the dad trying to force his cock in her

The UC viewed the video described by Defendant, which depicted an adult female performing oral sex and other sexual acts on a prepubescent female child.  On September 13, 2016, after accessing Defendant's DropBox account, the UC observed that the account contained eleven folders, each housing images and videos depicting child pornography and totaling 1.4 Gigabytes of data.  The folders within the DropBox account were labeled as follows:

- • "b" (containing eight videos depicting child pornography)

- • "beast" (containing twenty-four videos depicting child pornography)

- • "G" (containing five videos depicting child pornography and ten images of child pornography)

- • "Hey" (containing three videos depicting child pornography)

- • "ninas" (containing one video depicting child pornography)

- • "the all mighty collection" (containing eleven videos depicting child pornography and images of child pornography)

---

[3] "Videos" was the title of another folder in Defendant's DropBox account used to store child pornography.

[4] "Hey" was the title of another folder in Defendant's DropBox account used to store child pornography.

• "Vattic's cp blowjobs" (containing six videos depicting child pornography)

• "videos" (containing eleven videos depicting child pornography)

• "xxx" (containing one video depicting child pornography and ninety-eight images of child pornography)

• "young" (containing thirty videos depicting child pornography and five images of child pornography)

• "young(1)" (containing twenty-nine videos depicting child pornography)

Thereafter, Defendant and the UC continued to maintain sporadic contact through text messages, discussing plans to get together in the future.  On October 9, 2016, Defendant indicated that she had accessed her DropBox account and noticed that someone else had accessed it.  The UC informed Defendant that he had accessed the account and viewed the child pornography contained therein.  On October 17, 2016, Defendant informed the UC that she had uploaded some new material to the DropBox account since their last discussion and provided him again with the same email address and password to access the DropBox account.

The next day, on October 18, 2016, the UC accessed the DropBox account from his computer and found thirteen folders, each of which contained child pornography amounting to 2.4 Gigabytes of data.  The folders were:

• "b" (containing eight videos depicting child pornography)

• "beast" (containing twenty-four videos depicting child pornography)

• "daddy" (containing 110 videos depicting child pornography and seventy-five images of child pornography)

8

• "G" (containing five videos depicting child pornography and ten images of child pornography)

• "Hey" (containing three videos depicting child pornography)

• "MomPthc" (containing sixteen videos depicting child pornography)

• "ninas" (containing one video depicting child pornography)

• "the all mighty collection" (containing eleven videos depicting child pornography and six images of child pornography)

• "Vattic's cp blowjobs" (containing six videos depicting child pornography)

• "videos" (containing eleven videos depicting child pornography)

• "Xxx" (containing one video depicting child pornography and 101 images of child pornography)

• "young" (containing thirty-nine videos depicting child pornography and fifty-one images of child pornography)

• "young(1)" (containing twenty-nine videos depicting child pornography)

After the UC first viewed the child pornography in Defendant's DropBox account on September 13, 2016 but before Defendant's arrest on October 27, 2016, FBI agents accessed her DropBox account and downloaded some or all of the child pornography onto an FBI-owned device. The UC and Defendant then maintained sporadic contact via text message throughout October, discussing, among other things, whether Defendant preferred meeting the UC's purported daughter or his twelve-month-old female niece to whom the UC also claimed to have sexual access. De-

fendant expressed that she was more comfortable meeting the younger niece because she was concerned with the UC's purported daughter's age and the possibility that she would verbally disclose any abuse.

During the course of her communications with the UC, Defendant provided a contact telephone number. A query of the number in open source search engines linked it to a social networking profile in the name of "Pamela Wilson." Publicly available information posted on this profile included a current residence in Lorton, Virginia and multiple photographs of Defendant. FBI agents conducted searches in Accurint and the Virginia Department of Motor Vehicles system, leading to the full identification of Defendant as Pamela Kirea Wilson. The photograph associated with Defendant's Virginia driver's license matched the individual displayed on the social networking profile and the image sent to the UC during the course of their conversations.

Defendant was arrested on October 26, 2016. At arrest, she was advised of her *Miranda* rights, which she waived. During the course of her interview, Defendant admitted that she met the UC, who was using a screen name of "John," in response to an online advertisement. Defendant admitted that she had engaged in a text messaging exchange with the UC, during the course of which she sent the UC the link to her DropBox account. Defendant admitted that she had created the DropBox account to store and share her child pornography. Defendant provided the username and password to the DropBox account, which matched the username and password she had provided the UC through text message and which the UC had used to access her DropBox account. Defendant stated that she accessed DropBox on her cellular phone to collect, store, and share her

child pornography, and provided a cellular phone number that matched that number she had used to send the UC the link to her DropBox.

Defendant further admitted that she had previously worked in a children's daycare, but that she quit that job a year earlier after federal agents in Virginia began investigating her for a separate charge of distributing of child pornography.  Detective Palchak explained at the detention hearing that federal agents began investigating Defendant in approximately March of 2015 after gathering evidence to suggest that she was distributing child pornography in a KiK chat room.  KiK, a messaging application for mobile devices, allows users to exchange messages either one-on-one or in group chat rooms.  Defendant posted to a KiK chat room images and videos of child pornography depicting adults preforming sexual acts on children, including infants and toddlers.  Federal agents with the Department of Homeland Security obtained information related to Defendant's KiK subscriber account and came to believe that she was distributing child pornography to the KiK chat room from her home address in Virginia.

Based on the information gathered during the Virginia investigation, and prior to Defendant communicating with Detective Palchak, federal agents obtained and executed a search warrant for Wilson's home.  When the agents went to execute the warrant at Defendant's home in which she lived with her mother, Defendant was not present.  The agents ultimately made contact with Defendant and advised her that she was being investigated for the distribution of child pornography due to her postings on KiK.  Months later, Defendant, while still under investigation for her alleged distribution of child pornography in KiK chat rooms, began the communications described herein

with Detective Palchak.

## DISCUSSION

### I.   Dismissal of the Complaint

Defendant initially challenges the sufficiency of the evidence presented by the government, arguing that the Complaint filed against her fails to support a finding of probable cause to believe that she distributed child pornography in violation of 18 U.S.C. § 2252(a)(2).   Specifically, Defendant takes issue with the government's proffer regarding her alleged *distribution* of the child pornography and asserts that she merely provided Detective Palchak with the means to *access* it. *See* Def. Opp. [Dkt. 4] at 1–6.  According to Defendant, this distinction matters; the distribution of child pornography under 18 U.S.C. § 2252(a)(2), Defendant argues, requires an actual transfer of possession of the pornographic material.  *Id.*  Unlike, for example, placing child pornography on an online file sharing network for Detective Palchak to access and view, Defendant contends that her conduct falls short of the "download or transfer" requirement read into 18 U.S.C. § 2252(a)(2) by the Third Circuit in *United States v. Husmann*, 765 F.3d 169, 174 (3d Cir. 2014). *See* Def. Opp. [Dkt. 4] at 3-6.  Instead, Defendant analogizes her conduct to that of an art museum curator, providing Detective Palchak with the means to view her child pornography without transferring it, or even intending to transfer it, to him.  *Id.* at 6.

Accordingly, Defendant requests that the Court dismiss the Complaint against her pursuant to Rule 5.1(f) of the Federal Rules of Criminal Procedure.  Federal Rule 5.1(f) calls for the Court to dismiss the Complaint and discharge Defendant if, at the preliminary hearing, the undersigned

finds "no probable cause to believe an offense has been committed or [Defendant] committed it . . . ." Fed. R. Crim. P. 5.1(f); *see also* 18 U.S.C. § 3060(a). Indeed, the purpose of a preliminary hearing, as outlined by the D.C. Circuit, "is to afford the accused (1) an opportunity to establish that there is no probable cause for [her] continued detention and thereby regain [her] liberty and, possibly, escape prosecution, and (2) a chance to learn in advance of trial the foundation of the charge . . . ." *Blue v. United States*, 342 F.2d 894, 901 (D.C. Cir. 1964). At issue here is the former purpose.

### A.  Probable Cause Standard

A finding of probable cause requires proof of "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973). "[A] showing of probable cause may stop considerably short of proof beyond a reasonable doubt, and evidence that leaves some doubt may yet demonstrate probable cause." *Id.* It is a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

### B.  Probable Cause Finding

Defendant really only challenges the sufficiency of the government's evidence of distribution of the child pornography at issue under 18 U.S.C. § 2252(a)(2). The Court finds that the government's showing is sufficient to demonstrate probable cause to believe that Defendant violated that section. To begin, Detective Palchak testified at the preliminary hearing that FBI agents

13

used the email address and password provided by Defendant to access, view, and, in fact, download the child pornography from Defendant's DropBox account prior to her arrest, rendering Defendant's "download or transfer" argument a non-issue. But, even if neither Detective Palchak nor any other law enforcement agent had in fact downloaded the child pornography from Defendant's DropBox account, the Court would nevertheless find that probable cause exists to support the government's Complaint charging her with the distribution of child pornography. It is undisputed that Detective Palchak accessed child pornography on his computer from an electronic file that Defendant intended to share with him from her computer. That is sufficient for a violation of section 2252(a)(2).

Defendant errs in analogizing this case to the Third Circuit's decision in *Husmann*. In *Husmann,* there was no evidence that anyone had accessed, viewed, or downloaded the child pornography that the defendant had made available through a file sharing network. *Husmann*, 765 F.3d at 172. Accordingly, the Third Circuit found that no distribution of child pornography had occurred. *Id.* at 177. Here, however, Defendant provided Detective Palchak with the information needed to access her DropBox account, which contained multiple videos and images depicting child pornography, and instructed him to view specific videos that she enjoyed. Detective Palchak then accessed and viewed the videos on his own computer and discussed their content with Defendant. "Distribution" under section 2252(a)(2) does not require more. The Third Circuit defined "distribution" of child pornography under 18 U.S.C. § 2252(a)(2) as "apportion[ing], giv[ing] out, or deliver[ing]," and necessarily involving "the transfer of materials to another person." *Id.* at 174.

14

By providing Detective Palchak with the information needed to access her DropBox account containing child pornography and then instructing him to view certain videos, Defendant "apportioned" or "delivered" the child pornography to him, which he then accessed and viewed on his own computer in a way sufficient for those images use.  *Id.* at 174; *see also United States v. Chiaradio*, 684 F.3d 265 (9th Cir. 2012) ("When an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred.").  Indeed, Defendant's conduct contributed directly to the harm that section 2252(a)(2) seeks to redress, that is, the "persistent concern" of victims of child pornography "over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification." *Husmann*, 765 F.3d at 179.

For all these reasons, the Court believes that the government has met its burden to present evidence supporting a finding of probable cause that Defendant committed the crime of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2).

## II.   <u>Legal Standard for Detention</u>

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et. seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."  18 U.S.C. § 3142(e).  Thus, even absent a flight risk, danger to the community alone is sufficient reason to order pretrial detention.  *United States v. Salerno*, 489 U.S. 739, 755 (1987);

15

*United States v. Perry*, 788 F.2d 100, 113 (3d. Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

If a judicial officer finds that there is probable cause to believe that a defendant committed an offense involving a minor victim under 18 U.S.C. § 2252(a)(2), a rebuttable presumption arises that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(3)(E). Here, Defendant has been charged with an offense involving a minor victim pursuant to 18 U.S.C. § 2252(a)(2), and the Court finds, based on Defendant's submission on the issue of probable cause and both parties' proffer of evidence, that there is probable cause to believe that Defendant committed the crime. Accordingly, the rebuttable presumption under Section 3142(e)(3)(E) is triggered.

Once a rebuttable presumption is triggered, it imposes a burden of production on the defendant "to offer some credible evidence contrary to the statutory presumption." *See United States v. Altishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Even where defendant offers evidence to rebut the presumption, the presumption is not erased; rather, the "presumption is incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight." *United States v. Ali*, 793 F. Supp. 2d 386, 291 (D.D.C. 2011); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption "represents Congress' general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches").

16

## A. The Rebuttable Presumption

Based on the record before it, the Court finds that the defendant has not rebutted the presumption of dangerous raised by the crime with which she is charged. The defense offers to place Defendant in her mother's house, the same location she was in when she committed the crimes alleged in the Complaint as well as the behavior that led to law enforcement's previous investigation of her. It therefore seems unlikely that Defendant's mother, or any third party for that matter, can effectively supervise her. Put simply, Defendant's conduct is too dangerous to be managed through a supervision program.[5] In any event, even were the Court to deem the presumption rebutted, and to consider it along with the four section 3142(g) factors, the Court would reach the same result: Defendant should be detained pending trial.

## B. The Four Factors of Section 3142(g)

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer considers, in addition to the rebutted presumption: (1) the nature and circumstances

---

[5] Defense counsel argued during the detention hearing that Defendant be released into the High Intensity Supervision Program ("HISP") with electronic location monitoring. In support of her position, she cited to a number of cases in this District in which the Court ordered a defendant charged with violating 18 U.S.C. § 2252 released into HISP. Considering the facts before the Court, it is unlikely that the HISP program, or any other condition, would reasonably assure the safety of the community because the Defendant would likely still find a way to access the Internet. Further, in the cases cited to by Defendant, the Court notes that none of them involved a defendant who expressed the same level of interest in traveling to sexually abuse a minor victim as Defendant did here. *See United States v. Ryan Young*, 15-mj-466; *see also United States v. Eduardo Abreu*, 14-mj-418 (JMF); *United States v. Wesley Hawkins*, 13-mj-478 (JMF); *United States v. Cody Wolfe*, 09-mj-668; *United States v. Mark Misiano*, 15-mj-599 (AK); *United States v. James W. Green, Jr.*, 13-mj-032 (AK).

of the offense; (2) the weight of the evidence against the defendant; (3) the history and character-

istics of the defendant; and (4) the nature and seriousness of the danger to any person or the com-

munity that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

### 1.  Nature and Circumstances of the Charged Offense

The first factor, the nature and circumstances of the charged offense, favors detention.  The

charged offense is extremely serious as it involves the sexual abuse of minor victims, including in

this case toddlers and infants.  Reflecting the seriousness of this charge, a violation of Section

2252(a)(2) carries a minimum term of imprisonment of five years.

The Court also notes that the facts alleged by the government present a particularly dis-

turbing case of distribution of child pornography.  In addition to sharing a large volume of child

pornography with Detective Palchak, Defendant requested that Detective Palchak create a new

video of him sexually abusing his purported daughter for Defendant's enjoyment.  It is only be-

cause Detective Palchak's daughter was not real that another child was not injured at Defendant's

request.

Moreover, Defendant sought sexual access to Detective Palchak's purported nine-year-old

daughter.  The Court finds unpersuasive Defendant's argument that her reluctance to meet with

Detective Palchak suggests that her conversations with him about her desire to sexually abuse his

purported daughter were fantasies.  The record does not indicate that Defendant had no intention

of meeting with Detective Palchak for purposes of abusing his purported daughter, but, rather, that

her caution delayed her from doing so before she was arrested.  Indeed, it appears to the under-signed that Defendant wanted to make absolutely certain that her criminal conduct would not be discovered like it had been the prior year in the Virginia investigation.  She refused to communicate with Detective Palchak on KiK.  She asked Detective Palchak whether his purported daughter's mother was involved in the sexual abuse.  She asked Detective Palchak if he had established rules with his daughter about talking about the sexual abuse.  At one point, she expressed a preference to sexually abuse Detective Palchak's purported niece instead of his daughter because his niece was described as being too young to speak.  All of these facts make the circumstances of Defend-ant's offense of particular concern to the Court.

### 2.   The Weight of the Evidence

The weight of the government's evidence against Defendant is very strong.  Its case against Defendant is supported by emails, text messages, the child pornography in Defendant's DropBox account, and Defendant's own post-arrest statement confirming the essential facts underlying the elements of the offense.  Therefore, the Court finds that the weight of the evidence favors deten-tion.

### 3.   The History and Characteristics of the Defendant

While the Court appreciates that Defendant has no prior criminal history and is enrolled in school, Defendant's statements and behavior are cause for concern.  To start, Defendant has sig-nificant prior contact with law enforcement involving the same crime alleged here: the distribution of child pornography.  Indeed, law enforcement in Virginia searched Defendant's house and met

with her as part of its investigation into her alleged distribution of child pornography, all within the past year.  Defendant knew that she was being investigated for the distribution of child pornography, yet continued to engage in the same conduct, which led to the charge she now faces in this District.  Only this time, her criminal behavior was accompanied by a higher level of sophistication designed to avoid similar investigations, i.e., using DropBox instead of KiK to allow others to view the child pornography she had collected.  Moreover, she escalated her criminal behavior this time around, making even more child pornography available for consumption, encouraging Detective Palchak to send her new videos of him sexually abusing his purported daughter for Defendant's own pleasure, and seriously contemplating her own sexual abuse of a nine-year-old girl. This course of conduct leaves the Court with no confidence that Defendant will not re-offend were she released.

### 4.  The Danger to the Community

The fourth factor, the danger to the community posed by Defendant, also weighs in favor of detention.  The Court is cognizant of the toll which illicit sexual conduct with minors and the distribution of child pornography has taken, and continues to take, upon the community.  It is the cost and the danger posed by the individual who engages in such illegal conduct that informed Congress when it created the statutory presumption of detention in these cases.  *See* 18 U.S.C. § 3142(g).  Moreover, the government's proffer demonstrates that Defendant was interested in traveling to Washington, D.C. with the intention of carrying out a plan to engage in illicit sexual acts with Detective Palchak's purported nine-year-old daughter.

For the aforementioned reasons, the Court believes that the defendant presents a significant danger to the community and has little confidence that there is any condition or combination of conditions that would keep the community safe were the defendant to be released.

## CONCLUSION

Based upon the consideration of all the evidence and the factors set forth in Section 3142(g), the rebuttable presumption under Section 3142(e)(3)(E), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community.  Therefore, the government's motion for pretrial detention is granted.

Date: November 14, 2016

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE